UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:09-cr-00047-2 |
| | ) | |
| JOHN MONZELL BANKS | ) | |

**MEMORANDUM OPINION AND ORDER**

With his imprisonment expected to last until December 23, 2027, John Banks was released to Dismas Charities, a halfway house, on May 27, 2020. That release was pursuant to a portion of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), PL 116-136, Mar. 27, 2020, 134 Stat. 281., that authorized the Bureau of Prisons ("BOP") to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" under 18 U.S.C. § 3624(c)(2).

From all outward appearances, Banks has done exceedingly well since his release. After living at Dismas for approximately four months, he was approved to live with his cousin and her husband in Clarksville, Tennessee. There, he resided for approximately a year where he helped out with household chores. He was then permitted to move into his own apartment. (Doc. No. 622 at 8-9 & Exhs. 2-4).

During the entirety of his home confinement, Banks has maintained employment with Trane Technologies. He has excelled, and now helps train new employees. Banks also assists in caring care for his son, who has certain health issues, easing the buden on his daughter who had been providing the primary care. (Id.).

Because Banks was released directly by the BOP as part of the CARES Act, he agreed to a number of conditions and restrictions. These included: residing in an approved residence, except

when working; accepting phone calls and home and job site visits; reporting to his probation officer at least once a week; consenting to drug and alcohol screening; continuing mental health and substance abuse treatment; wearing an ankle monitor; refraining from drinking alcohol; not driving or owning a motor vehicle without permission; and maintaining employment. (Doc. No. 622-1 at 6-10).

It was Banks' understanding that, absent a violation of the above terms of his release, he would remain free until the term of his imprisonment expired. This apparently was also the understanding of the BOP at the time. In a statement provided to the Judiciary Committee on December 2, 2020, Michael D. Carvajal, Director of the BOP, indicated that "[a]s the pandemic grew more widespread, the Bureau began aggressively screening the inmate population for inmates who were appropriate for transfer to an RRC [Residential Reentry Center] or Home Confinement for service of the remainder of their sentences." www.congress.gov/116/meeting/house/111100/ witnesses/HHRG-116-JU08-Wstate-CarvajalM-20201202.pdf.

The federal government's position radically changed shortly thereafter, however, when the Department of Justice Office of Legal Counsel issued a Memorandum on January 15, 2021. The Memorandum was prefaced with the following statement:

> The Coronavirus Aid, Relief, and Economic Security Act authorizes the Director of the Bureau of Prisons to place prisoners in home confinement only during the Act's covered emergency period and when the Attorney General finds that the emergency conditions are materially affecting BOP's functioning. Should that period end, or should the Attorney General revoke the finding, the Bureau would be required to recall the prisoners to correctional facilities unless they are otherwise eligible for home confinement under 18 U.S.C. § 3624(c)(2).
>
> BOP's authority under 18 U.S.C. § 3621(a) and (b) does not provide an alternative basis for authorizing continued home confinement for prisoners ineligible for continuing home confinement under section 3624(c)(2).

2

https://www.justice.gov/olc/file/1355886/download.

Banks has now filed a Motion for Early Release, arguing that he "has presented extraordinary and compelling reasons in support of his release, namely the drastic change in policy requiring Banks' return to prison after the BOP's earlier claims that CARES Act recipients would serve the remainder of their terms on home confinement if they complied with the rules." (Doc. No. 622 at 20). Even though Banks is to be commended for his efforts since his release and the Court hopes that he continues on the path towards rehabilitation, his motion must be denied at this point in time for three related reasons.

First, the policy on which his request is based was recently changed back to the way it was before. That is, on December 15, 2021, the Office of Legal Counsel reversed course, issuing the following statement:

> We do not lightly depart from our precedents, and we have given the views expressed in our prior opinion careful and respectful consideration. Based upon a thorough review of the relevant text, structure, purpose, and legislative history—and a careful consideration of BOP's analysis of its own authority—we conclude that the better reading of section 12003(b)(2) and BOP's preexisting authorities does not require that prisoners in extended home confinement be returned en masse to correctional facilities when the emergency period ends. Even if the statute is considered ambiguous, BOP's view represents a reasonable reading that should be accorded deference in future litigation challenging its interpretation."

https://www.justice.gov/olc/file/1457926/download. As a consequence, Banks claim is moot because "the issues presented are no longer 'live,'" Powell v. McCormack, 395 U.S. 486, 496 (1969), and "[a] federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue," Cleveland Branch, N.A.A.C.P. v. City of Parma, 263 F.3d 513, 530 (6th Cir. 2001).

Second, even if not moot, there is presently no justiciable case or controversy before the

3

Court. To meet the jurisdictional requirements of Article III's "case" or "controversy" requirement, "a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." Bennett v. Spear, 520 U.S. 154, 162 (1997). "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact." Whitmore v. Arkansas, 495 U.S. 149, 158 (1990).

Any injury to Banks is not impending. He has not been instructed to return to prison, nor has he been specifically threatened with having to return. To the contrary, the BOP represented to the Office of Legal Counsel when it reconsidered the policy that the BOP "would not ordinarily return a prisoner from home confinement to secure custody without a disciplinary reason," that the "widespread return of prisoners without a disciplinary reason would be unprecedented," and that "return[ing] compliant prisoners from home confinement would still be a departure from BOP's ordinary practice." https://www.justice.gov/olc/file/1457926/download.

Third, while Banks faces the possibility of returning to prison were he to fail to comply with the terms of release that he agreed to, and while those terms may be more stringent than those imposed for supervised release, he is in no different than the almost 5,000 prisoners who benefitted from the BOP's decision to release them early to home confinement once COVID-19 began rapidly spreading. Id. As such, his circumstances are not extraordinary and compelling for purpose of 18 U.S.C. § 3582(c)(1)(A). See United States v. Hunter, 12 F.4th 555, 562 (6th Cir. 2021) (citation omitted) (stating that "defining extraordinary and compelling is left to the district court's discretion'").

Accordingly, Banks' Motion for Reduced Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)

is **DENIED**. Said denial is **WITHOUT PREJUDICE** should BOP policy or the advice of the Office of Legal Counsel change once again, or should Banks be ordered to return to prison without having violated the agreed-to terms of his early release. With this ruling, his Motion to Extend Time to file a sur-reply is **DENIED**.

 IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

5

Case 3:09-cr-00047   Document 629   Filed 01/03/22   Page 5 of 5 PageID #: 7508