# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

UNITED STATES OF AMERICA )
)
)     Case No. 3:09-cr-00047-2
v. )     Chief Judge Crenshaw
)
)
JOHN MONZELL BANKS )

## MOTION FOR SENTENCE REDUCTION PURSUANT TO 18 U.S.C. § 3582(c)(1)

John Monzell Banks respectfully moves the Court for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) in light of the new and binding policy statement that went into effect on November 1, 2023. Mr. Banks is eligible for relief under one of the grounds spelled out by that new policy statement: "other reasons" under § 1B1.13(b)(5).

In May of 2020, Mr. Banks was transferred to prerelease custody (home confinement) by the Bureau of Prisons ("BOP") pursuant to its authority under the CARES Act. In the more than three and a half years since his transfer, he has successfully acclimated to life outside prison and complied with every restriction imposed on him, exhibiting truly extraordinary rehabilitation. The onerous terms of his home confinement interfere with his role as an employee, father, and grandfather. At this point, the circumstances of his continued prerelease custody fail to serve any legitimate sentencing purpose. In light of these "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1), and in light of the Sentencing Commission's new binding policy statement, the Court should reduce Mr. Banks' sentence.

# I    Statement of facts

## A.    Mr. Banks served well over half of his 240-month sentence in prison for a non-violent offense.

In February of 2009, Mr. Banks and three co-defendants were charged in a one-count indictment with conspiracy to distribute five kilograms or more of cocaine. (D.E. 9, Indictment at PageID# 12-14.) Mr. Banks participated in the conspiracy between 2004 and 2006 by arranging for the transportation of cocaine from California to Tennessee, and distributed the drugs once they arrived in Tennessee. (Presentence Report ("PSR") at ¶ 4-13.) He was sentenced to 20 years of incarceration, the mandatory minimum at the time, to be followed by 10 years of supervised release. (D.E. 180, Judgment at PageID# 668-69.) Under today's law, his mandatory minimum would be 10 years, *see* 21 U.S.C. § 841(b)(1), or 15 years if the government filed for enhanced penalties under 21 U.S.C. § 851—an amount of time he has already served.

While incarcerated, Mr. Banks did not incur any disciplinary infractions, and worked in the administration building of his facility as a janitor.

## B.    The BOP transferred Mr. Banks to home confinement in May 2020 after finding that he posed a minimal risk of reoffending.

In March 2020, in response to the Covid-19 public health emergency, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), PL 116-136, Mar. 27, 2020, 134 Stat. 281. The CARES Act, *inter alia*, authorized the Director of the BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" under 18

2

U.S.C. § 3624(c)(2). In a memorandum to the Director of the BOP, the Attorney General conveyed that "in assessing which inmates should be granted home confinement," the agency should "consider the totality of the circumstances for each individual inmate, the statutory requirements for home confinement, and [a] non-exhaustive list of discretionary factors" that included the individual's

(i)     age and vulnerability to COVID-19;

(ii)    security level, with priority for low- and minimum-security inmates;

(iii)   disciplinary record, with priority for those with no violent or gang-related activity and no infractions in the last year;

(iv)    PATTERN score, with priority for those with a minimum score;

(v)     re-entry plan; and

(vi)    offense and potential danger to the community.

Attorney General Memorandum, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020).[1]

Applying this "aggressive[]" screening process, the BOP determined that Mr. Banks qualified for home confinement. *See Update on COVID-19 and Home Confinement*, BOP (Apr. 5, 2020).[2] On May 27, 2020, the BOP transferred Mr. Banks to Dismas Charities, a residential re-entry center in Nashville, Tennessee, that would oversee the home confinement. (D.E. 622-1, Transfer Paperwork.)

---

[1] Available at
https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf
[2] Available at https://www.bop.gov/ resources/news/20200405_covid19 _home_ confinement.jsp

3

### C. Mr. Banks has fully complied with the strict conditions of home confinement for the past 44 months.

Mr. Banks agreed to follow an extensive set of strict conditions in prerelease custody. (*Id.* at PageID# 7404-08.) Most disruptive is that he cannot leave his home other than to go to work. (*Id.*). Other conditions include: accepting phone calls and home and job site visits; reporting to his probation officer at least once a week; consenting to urinalysis or alcohol testing; continuing mental health and substance abuse treatment; wearing an ankle monitor; refraining from drinking alcohol; not driving or owning a motor vehicle without permission; and maintaining employment with Trane Technologies. (*Id.*) Mr. Banks must be available to answer frequent calls from his probation officer and he must call and check in before leaving for work, once he arrives at work, and once he returns home. He must also drive to Nashville from Clarksville three times a month for drug testing. His movements are controlled and limited.

After residing at Dismas Charities for approximately four months, Mr. Banks was approved in August 2020 to move in with his cousin and her husband in Clarksville, Tennessee. (*Id.* at PageID# 7409.) Almost a year later, again as a result of his excellent performance, Mr. Banks was approved to move into an apartment of his own, (*id.* at PageID# 7410), where he remains.

Since his release, Mr. Banks has worked for Trane Technologies. His employer, Mr. Ogburn, called him "an asset to society, the local community and the American workforce." (D.E. 622-3, Ogburn Letter.) He later stated that Mr. Banks continues to excel at work and has been given a job with more responsibility there:

"He continues to impress us everyday through hard work and dedication. We are very pleased to have him on our team." (D.E. 635-1, Ogburn E-mail.) Mr. Banks continues to excel in his position at Trane Technologies.

## II. Exhaustion of remedies

On November 1, 2023, through counsel, Mr. Banks submitted a written request for a reduction in sentence to the Director of RRM Nashville and has not received a response. (Exhibit 1, Warden Letter.) Because more than 30 days have passed since Mr. Banks submitted this request, this Court is authorized to consider his motion at this time. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

## III. Argument

Section 3582(c)(1) of Title 18—sometimes called the "compassionate release" statute[3]—allows a court to reduce a prisoner's final, lawfully-imposed sentence when "extraordinary and compelling reasons" justify a reduction, when such a reduction is consistent with applicable policy statements found at U.S.S.G. § 1B1.13, and when such a reduction is warranted by the traditional sentencing factors listed at 18 U.S.C. § 3553(a). *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc).

---

[3] This label is a "misnomer" because § 3582(c)(1) is not limited to cases involving terminal illness or the like. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). *See* 88 Fed. Reg. 28,254, 28,256 (May 3, 2023) (Reason for Amendment to U.S.S.G. § 1B1.13) (noting that the label "compassionate release" is inapt because "that phrase appears nowhere in the [Sentencing Reform Act] and sentence reductions that do not result in immediate release are authorized by the law").

5

Through § 3582(c)(1), Congress has given the courts the power to reduce a sentence when "extraordinary and compelling reasons" justify that relief. And, through 28 U.S.C. § 994(t), Congress "delegated" to the Sentencing Commission the task of saying "what qualifie[s] as 'extraordinary and compelling.'" *McCall*, 56 F.4th at 1053. The Sentencing Commission promulgated new policy statements effective November 1, 2023 that establish what qualifies as "extraordinary and compelling" under § 3582(c)(1). 88 Fed. Reg. 28,254, 28,258 (May 3, 2023) (Sentencing Guideline amendments effective Nov. 1, 2023). Although Mr. Banks has twice filed for a sentence reduction in the past, he files the instant motion pursuant to that new, binding policy statement. One provision of the Commission's policy statement at § 1B1.13 is applicable to Mr. Banks: the catch-all provision for "Other Reasons." 88 Fed. Reg. at 28,255 (promulgated as U.S.S.G. §§ 1B1.13(b)(5), (6)).

### A. "Other Reasons" warrant finding Mr. Banks eligible for relief.

At U.S.S.G. § 1B1.13(b)(5), the Commission has retained a "catchall ground" for finding extraordinary and compelling reasons warranting relief. 88 Fed. Reg. at 28,258. That catchall ground, labeled "Other Reasons," provides for relief in the following circumstance:

> The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

88 Fed. Reg. at 28,255. Paragraphs (1) through (4) describe grounds for relief based on the defendant's medical circumstances, the defendant's advanced age, the

defendant's family circumstances, and the defendant's victimization within prison. *Id.* at 28,254-28,255.

In its Reasons for Amendment, the Commission explains that this catchall ground can apply even when the "other reasons" are *not* "similar in nature and consequence to the specified reasons" in paragraphs (1) through (4). 88 Fed. Reg. at 28,258. Rather, the "other reasons" "need be similar only in gravity[.]" *Id.* Paragraphs (1) through (4) present situations that are grave due to severe yet no longer justifiable suffering. For example, in those situations, the defendant is likely to die in prison due to a medical crisis beyond anyone's control, or the defendant is suffering severe abuse in prison due to no fault of his own, or the defendant's dependent family member is likely to suffer severely from the defendant's absence due to no fault of their own. In each case, the defendant's custodial penalty triggers a severe hardship that cannot presently be justified by the defendant's crime. In each situation, the punishment has become unjustifiably cruel.

The Commission gives the following example, while also showing how a nonretroactive guideline amendment can play a strictly secondary role in a § 3582(c)(1) reduction:

> For example, a defendant's motion may present the following circumstances: (a) commendable rehabilitation while incarcerated; (b) the offense conduct occurred when the defendant was in his late teens or early twenties; and (c) pursuant to intervening legislation or intervening Guidelines amendments, the sentence likely to be imposed at the time of the motion would be lower than the sentence being served, but not grossly so. In those circumstances, the change in law could not properly be considered an extraordinary and compelling reason warranting a reduction in sentence. However, if the court determines that the combination of the other two factors constitutes an extraordinary and compelling reason, the change in law is among the broad

7

array of factors that may be properly considered in determining the extent of any such reduction.

88 Fed. Reg. at 28,258.

Mr. Banks can show "other reasons" amounting to "extraordinary and compelling" reasons that are similar in gravity to those described in the new § 1B1.13(b)(1) through (4). Consider the following three factors:

### i. Mr. Bank's rehabilitation has been exceptional.

As detailed *supra*, section I.C, Mr. Banks did not have any disciplinary infractions while incarcerated for years, and his behavior and efforts helped make him one of the few eligible for CARES Act release. *See, e.g, United States v. Colon*, No. 91-CR-685 (LAP), 2023 WL 6283068, at *5 (S.D.N.Y. Sept. 26, 2023) (granting a reduction to a CARES Act recipient in part due to the fact that he had no disciplinary infractions and did not pose a danger). Over the three and a half years, Mr. Banks undertook the difficult process of rebuilding his life, and his stellar performance while on strict home confinement shows that he is doing an extraordinary job of reintegrating into his community. He moved from living at Dismas Charities, to living with a cousin, to living on his own, all with the blessing of probation. He has entered into another lease for his home, and pays his bills for electricity, gas, water, internet, and car insurance. He has excelled in his long-time position at Trane Technologies, in supporting his family, and in strengthening community ties. He enjoys the loving support of his daughter, family, and community. (*See, e.g.,* D.E. 622-4.) His success in acclimating to life outside prison walls is not surprising considering his non-violent record. Mr. Banks has

8

demonstrated the kind of rehabilitation and reintegration the criminal justice system hopes for.

> ii. **Mr. Banks' continuing home confinement imposes unduly restrictive and burdensome conditions and no longer serves any legitimate sentencing purpose.**

The restrictive terms of prerelease custody were historically only imposed on individuals for a few months, as they adjusted to reentry into their communities. Before the Covid-19 pandemic, home confinement was used only at the tail-end of an individual's prison term—and only for a matter of months. Prisoners could be authorized to spend "a portion of the *final months* of [their prison] term (*not to exceed 12 months*), under conditions that [would] afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1). The CARES Act expanded this time-period, authorizing the Director of the BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement." Pub. L. No. 116-136 (2020); *see also* Attorney General Memorandum, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020).[4]

This change was beneficial, both generally and to Mr. Banks specifically, in permitting certain inmates to escape the dangerous conditions in BOP during an unprecedented pandemic. At this point, however, Mr. Banks' continued home

---

[4] Available at https://www.justice.gov/file/1262731/download

confinement fails to serve any legitimate sentencing purpose and exposes him to unduly restrictive and burdensome conditions.

Courts have found "extraordinary and compelling reasons" for a sentence reduction for defendants designated to home confinement under the CARES Act where they are subject to unusually restrictive or burdensome conditions. *See, e.g., United States v. Levi*, Case No. DKC-04-0235 (D. Md. July 6, 2021) (finding continued detention fail to serve any legitimate sentencing purpose); *United States v. Calhoun*, 539 F. Supp. 3d 613 (S.D. Miss. 2021) (reducing defendant's sentence after he was transferred to home confinement, which required that he report to distant residential reentry center once a month); *United States v. Donnes*, 2021 WL 4290679, Case No. 16-0012 (D. Mont. Sept. 21, 2021) (reducing defendant's sentence where restrictive home confinement conditions compromised his access to medical care, stating "[a]lthough these issues are logistical, they have serious implications for Donnes' health and safety").

Even after Mr. Banks completes his federal sentence, he will remain under the Court's supervision while he serves a ten-year term of supervised release—another factor that weighs in favor of relief. In *Calhoun*, the court noted that supervised release would ensure there was continued oversight of the defendant, without imposing the undue burden of forcing him to travel so far for status checks. The court stated:

> [R]eleasing him from home confinement to his term of supervised release will transfer his supervision from the halfway house an hour and a half away to a local probation officer who can offer Calhoun re-entry resources to ease his transition back into society. These are unusual times and circumstances, and

the Government has not pointed to any further penological goals that are served by requiring Calhoun to remain on home confinement for six additional months . . .

*Calhoun*, 539 F. Supp. 3d at 616. Further, although the DOJ has issued guidance stating that persons on home confinement through the CARES Act will not be forced to remand with the end of the emergency authorization period, that does not lift the cloud of uncertainty that hangs over Mr. Banks' future. 88 FR 19830. *See* Dept. of Just., *Final Rule Issued for Home Confinement Under the Coronavirus Aid, Relief and Economic Security (CARES) Act*, (announcing final rule granting discretion to the BOP Director to allow individuals placed on home confinement discretion to remain on home confinement after expiration of the emergency period).[5] The BOP retains the power to revoke Mr. Woods' release at any time for any perceived violation, and he has fewer procedural protections and rights compared to defendants on supervised release.[6]

Mr. Banks also experiences similar logistical difficulties and demands. He has committed himself to proving he is a reliable and trusted employee who will exceed his employer's expectations. But despite working in Clarksville, he must leave work and drive the hour-plus to Nashville three times a month at unpredictable and random times for drug-testing. The terms of his home confinement also prevent Mr. Banks from strengthening his relationship with his

[5] Available at https://www.justice.gov/opa/pr/final-rule-issued-home-confinement-under-coronavirus-aid-relief-and-economic-security-cares
[6] Under the BOP disciplinary process, inmates are not presumed innocent, are not provided counsel and are not afforded opportunity to confront and cross-examine witnesses. *See* 28 CFR 541.5, 28 CFR § 541.8(f).

11

grandchildren, who reside in Hopkinsville, Kentucky. Because he cannot cross state lines, he misses their school and sporting events. (Exhibit 2, Hopkins Letter 2.)[7]

Finally, and most importantly, the terms of his home confinement prevent Mr. Banks from caring for his son, John Hopkins. Mr. Hopkins suffers from mental illness, including bipolar disorder, psychosis, depression, and anxiety, which have also impacted his physical health. (*Id.*; D.E. 622-4, Hopkins Letter 1.) Due to these illnesses, Mr. Hopkins resides at an assisted living facility in Clarksville that provides adults with a history of mental illness a safe and stable place to live. (Exhibit 3, Hopkins Agreement; Ex. 2.)[8]  Mr. Banks sends money to help pay for his son's food, toiletries, transportation, and other necessary expenses, but he is limited by the terms of his home confinement. (Ex. 2.) Because he must wear an ankle monitor and cannot go anywhere except his home and place of employment, he cannot take Mr. Hopkins to and from appointments or visit frequently. (*Id.*) Being able to be fully present with his son would give Mr. Hopkins "a better quality of life." (*Id.*)

Many courts, including in this district, have granted release from the strict terms of CARES Act home confinement when a defendant is hindered from fully caring for a family member. *See, e.g., United States v. Roque*, No. 1:17-CR-6, ECF No. 454 (M.D. Tenn. Feb. 16, 2023) (granting release because burdensome conditions prevented defendant from fully caring for her son) (attached as Exhibit

---

[7] This letter was prepared for a Commutation Petition, which remains pending.
[8] For over a year, Mr. Hopkins was residing in a similar facility located in Chattanooga, Tennessee. Mr. Banks was unable to see his son at all during that time due to the distance, which was devastating. (D.E. 635 at PageID# 7527.)

4); *United States v. Potenciano*, No. 16 CR-1285 (BEN), 2022 WL 3364684 (S.D. Cal. Aug. 12, 2022); *United States v. Hebel*, No. 11 CR-20320, 2021 WL 6072303 (E.D. Mich. Dec. 23, 2021) (granting release based on rehabilitation combined with desire to care for defendant's elderly mother). To be clear, Mr. Banks is not arguing that he fits within the language of U.S.S.G. § 1B1.13(b)(3) (family circumstances of the defendant). Nor does he argue that his desire to care for his son, alone, constitutes extraordinary and compelling reasons. Rather, the combination of the many factors presented in this motion make him eligible for release. *See United States v. Totaro*, No. 4:99-CR-40137 (RAL), 2022 WL 795932 (D.S.D. Mar. 16, 2022) (granting release because although defendant did not fit into "family circumstances of the defendant" definition, his inability to take his wife to her chemotherapy appointments due to his home confinement terms, combined with his rehabilitation, together constituted extraordinary and compelling reasons for release).

The home confinement structure, once a source of support for Mr. Banks in his reintegration, now actually hinders that process. More than three and a half years later, the terms of Mr. Banks prerelease custody contribute significantly to a finding of "extraordinary and compelling reasons" for relief.

### iii. Mr. Banks' sentence would be shorter if sentenced under today's law.

Mr. Banks was sentenced in 2011 to the mandatory minimum, enhanced by his prior felony drug offense conviction, of 20 years. (D.E. 180, Judgment at PageID# 668-69.) Under today's law, his mandatory minimum if the government

13

filed for enhanced penalties under 21 U.S.C. § 851, would be 15 years, 21 U.S.C. § 841(b)(1), a period of time that he has already served.

Further, it appears that the parties, and Senior Judge John T. Nixon, intended for Mr. Banks to receive more jail credit than he was ultimately granted by BOP. At the time of his federal sentencing, Mr. Banks had already been convicted of cocaine possession in state court and was serving his state sentence; the parties agreed the state crime was part of the federal conspiracy. (D.E. 178, Plea Petition at PageID# 662; PSR at ¶ 20; D.E. 653, Plea/Sentencing Transcript at p. 22.) The plea petition stated that in addition to concurrent sentencing, Mr. Banks anticipated that he would be "given credit for this state time towards [his] federal sentence." (D.E. 178 at PageID# 662.)

At sentencing, Mr. Banks requested that his sentence run concurrent with the state sentence he was already serving. (D.E. 653, Plea/Sentencing Transcript at p. 4.) The government did not oppose the request and the Court ordered the sentence to run concurrent. (*Id.* at p. 25.) The Judgment, when issued, mistakenly stated "currently" instead of "concurrently." (D.E. 180, Judgment at PageID# 669.) Counsel for Mr. Banks filed a motion to correct spelling of the word, "and to further add to the Judgment that the Defendant be given jail credit for the time he served in federal custody in this case and for time he served in state custody in criminal number 40600738." (D.E. 182, Motion to Amend Judgment.) The motion noted that this request was in accordance with Mr. Banks' plea agreement. (*Id.*)

14

The Court issued an Order granting Mr. Banks' Motion. (D.E. 185, Order.) It ordered that: 1) the Judgment be amended to correct the spelling of concurrently; 2) the Judgment be further amended to include the following language: "The Court further recommends that the defendant be given jail credit for time served in federal and state custody while awaiting resolution of his case."; and 3) a transcript of the sentencing hearing be generated and appended to the Judgment. (*Id.*) For whatever reason, this never occurred: no Amended Judgment was entered on the docket, and a transcript was only generated when counsel ordered it in late 2023.

Mr. Banks was in state custody while awaiting resolution of his case from December 1, 2006 through September 24, 2009. (PSR at p. 1.) BOP gave him credit on his federal sentence for December 1, 2006 through July 10, 2007 (the day before the state sentence was imposed). (Exhibit 5, Computation Documents.) He did not receive credit for the 26 months between July 11, 2007 and September 24, 2009. (*Id.*) Of course, even if the Amended Judgement and transcript had been prepared and docketed as Judge Nixon directed, BOP still could have declined to give Mr. Banks full credit. It would have been a safer bet for Mr. Banks to have asked for a reduction in sentence under U.S.S.G. § 5G1.3(b). Regardless, Judge Nixon, with no opposition from the government, intended that Mr. Banks be given full credit for the time spent in state custody. Had Mr. Banks been given full credit as the Judge ordered, his remaining time on prerelease custody would be lowered substantially.

### iv. The combination of these factors together are "extraordinary and compelling" reasons for a sentence reduction.

These three factors, when considered together, present "other reasons" justifying relief under U.S.S.G. § 1B1.13(b)(5). *See, e.g, United States v. Woods*, No. 3:13-cr-00017-SLG, ECF No. 189, at p. 8 (D. Alaska Dec. 12, 2023) ("The Court finds that the combination of Mr. Woods's health conditions, caregiver status for his mother, and demonstrated rehabilitation constitute extraordinary and compelling reasons under "other reasons" pursuant to U.S.S.G. § 1B1.13(b)(5).") (attached as Ex. 6).

### B. Reducing Mr. Banks' sentence is consistent with the Commission's policy statements.

As shown above, reducing Mr. Banks' sentence is consistent with the new § 1B1.13(b), which fleshes out the meaning of "extraordinary and compelling." The analysis above is also consistent with § 1B1.13(d), which provides that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining *whether* and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* (emphasis added). And it is consistent with § 1B1.13(e), which states that "the fact an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement."

Finally, the policy statement states that a defendant is ineligible for relief if he is "a danger to the safety of any other person or to the community." U.S.S.G. §

1B1.13(a)(2) (citing 18 U.S.C. § 3142(g)). At 53, Mr. Banks' risk of recidivating in middle age is low. The non-violent offense for which he is serving a sentence occurred between 2004 and 2006 and he has been incarcerated since 2006. The selection of Mr. Banks as a CARES Act recipient, for which the BOP engaged in an aggressive screening process, is evidence of the agency's determination that he poses an extremely low risk of reoffending. *See United States v. Privette*, No. 07-cr-0133, D.E. 130 (E.D.N.C. Oct. 10, 2019) ("[T]hat Privette was deemed eligible to be released to home confinement demonstrates that the BOP does not consider him to be a danger to the community.") (available at D.E. 622-12). The fact that Mr. Banks has successfully abided by all conditions of confinement for the last 44 months reinforces the accuracy of that assessment. Nothing in the policy statement bars relief for Mr. Banks.

### C. The § 3553(a) sentencing factors support a sentence reduction.

When a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts then consider the relevant sentencing factors of 18 U.S.C. 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. 3582(c)(1)(A). Section 3553(a) of Title 18 establishes the parsimony principle: that a sentence should be "not greater than necessary" to fulfill the goals of federal sentencing. After considering all of the circumstances in this case—including Mr. Banks' non-violent conduct, rehabilitative progress, and low risk of recidivism—this Court should conclude that a time served sentence is appropriate under 3553(a).

17

The conduct for which Mr. Banks is currently serving time is a non-violent drug offense, with no weapons involved, he demonstrated responsibility for his actions by pleading guilty. (PSR at ¶ 4-13, 16.) He has no violent crimes in his criminal history (*Id.* at ¶ 18-20.) He was carefully chosen for home confinement through BOP's rigorous process and does not pose a risk to the public. Following his release from BOP custody, he will immediately begin a ten-year term of supervised release under this Court's supervision. (D.E. 180, Judgment, at PageID# 670.) During that period, if Mr. Banks fails to abide by any standard or special condition of supervised release, he may be subject to an additional sentence of incarceration and an additional term of supervised release.

In light of these facts, Mr. Banks would respectfully request a sentence of time served. In the alternative, he asks the Court to select a sentence tailored to his individual situation.

## CONCLUSION

Mr. Banks respectfully asks that the Court reduce his sentence under 18 U.S.C. § 3582(c)(1).

Respectfully submitted,


*/s/ Molly Rose Green*
MOLLY ROSE GREEN
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, TN  37203
615-736-5047
E-mail: molly_green@fd.org

Attorney for John Monzell Banks


## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2024, I electronically filed the foregoing *Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)* with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: Joseph P. Montminy, Nicholas J. Goldin, Monica Morrison and Juliet Aldridge, Assistant United States Attorney, 719 Church Street, Suite 3300, Nashville, TN 37203.


*/s/ Molly Rose Green*
MOLLY ROSE GREEN